**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ANIKA MAIDEN,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:25-cv-0101-L** |
| | § | |
| **A.W. BROWN LEADERSHIP ACADEMY and IDEA PUBLIC SCHOOLS,** | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant IDEA Public Schools' Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(6) and Brief in Support, filed July 31, 2026 (Doc. 32) ("Motion"). After considering the Motion, legal briefing, pleadings, record, and applicable law, the court **grants in part** and **denies in part** the Motion (Doc. 32).

### I. Background Facts and Procedural History

This civil action is the subject of two prior court decisions. *See Maiden v. A.W. Brown Leadership Acad.*, 2026 WL 717264 (N.D. Tex. Mar. 13, 2026) ("*Maiden I*"); *Maiden v. A.W. Brown Leadership Acad.*, 2026 WL 1126658 (N.D. Tex. Apr. 23, 2026) ("*Maiden II*"). The court assumes the parties' familiarity with *Maiden I* and *Maiden II* and recounts only the background facts and procedural history necessary to the court's disposition of the pending Motion.

On January 14, 2025, Plaintiff Anika Maiden ("Plaintiff" or "Ms. Maiden") filed this civil action against her former employer, Defendant A.W. Brown Leadership Academy ("A.W. Brown"). Pl.'s Orig. Compl. (Doc. 1). In Plaintiff's First Amended Complaint ("Amended Complaint") (Doc. 24), the live pleading, she has added IDEA Public Schools ("IDEA") as a

Defendant under theories of successor liability and joint employer liability based on an alleged operational transfer and continuity of operations at the subject campus. *See* Am. Compl. ¶¶ 8, 31-34. The well-pleaded facts in the Amended Complaint are as follows:

Defendant A.W. Brown employed Ms. Maiden as a schoolteacher and grade-level leader from August 11, 2006, through September 29, 2022. *Id.* ¶ 12.[1] On September 29, 2022, A.W. Brown terminated Ms. Maiden's employment as part of an alleged district-wide reduction in force ("RIF"). *Id.* ¶ 15. Ms. Maiden was over the age of forty at the time of her termination and alleges that the RIF was pretextual and that, in fact, "her termination was based on her age, as she is a member of a protected class." *Id.* ¶¶ 13-17.

After her termination, Ms. Maiden "continued to attend open, public-school activities and community events at the campus." *Id.* ¶ 21. On March 15, 2023, Ms. Maiden received a "banning/exclusion letter ('the Exclusion Letter') from counsel for A.W. Brown [], informing her that she was permanently barred from the campus and from all school-related activities." *Id.* ¶ 22. The Exclusion Letter falsely and maliciously accused Ms. Maiden of, among other things, maintaining ongoing inappropriate communications with parents and students and disruptive behavior at district events. *Id.* These accusations were "false, baseless, and known to be false by those who authored and disseminated the Exclusion Letter." *Id.*

The Exclusion Letter threatened Ms. Maiden with criminal prosecution if she entered the school's premises, "and was deliberately carbon-copied to the Dallas chief of police and the Dallas County District Attorney's office—a calculated act designed to intimidate Plaintiff, chill her exercise of constitutional rights, and damage her professional reputation in the community she had

[1] The court's recitation of the facts is taken from Plaintiff's First Amended Complaint (Doc. 24). At the 12(b)(6) stage, these facts are taken as true and viewed in the light most favorable to Plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

served for nearly two decades." *Id.* ¶ 23. Further, the "Exclusion Letter was issued during the period in which IDEA [ ] was actively negotiating and implementing its assumption of A.W. Brown's campus operations." *Id.* ¶ 26.

On or about July 31, 2024, Defendant A.W. Brown surrendered its charter to the Texas Education Agency and ceased all school operations, "rendering it effectively a dissolved entity with no active registered agent at its last known address." *Id.* ¶ 28. Prior to and in connection with this closure, on March 27, 2024, A.W. Brown and IDEA entered into an Operations Transfer Agreement and Purchase and Sale Agreement (the "Transfer Agreement"), pursuant to which IDEA:

> (a) acquired A.W. Brown's real property located at 5701 Red Bird Center Drive, Dallas, Texas 75237; (b) assumed full operational control of the campus; (c) agreed to maintain and continue the student enrollment and educational programs serving the same Dallas community population; (d) retained teachers, administrators, and staff members previously employed at the A.W. Brown campus; and (e) operates the campus under the name "IDEA A.W. Brown Academy," expressly continuing the use of the A.W. Brown name, identity, and legacy.

*Id.* ¶¶ 29-30. "The Transfer Agreement and IDEA's subsequent operations confirm extensive operational, physical, personnel, reputational, and mission-based continuity between A.W. Brown and IDEA's operation of the same campus." *Id.* ¶ 31.

In the Amended Complaint, Ms. Maiden asserts claims against A.W. Brown for its own alleged conduct and against IDEA (under theories of successor liability and joint employer liability) for age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"); retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the ADEA, 29 U.S.C. § 623(d); and, pursuant to 42 U.S.C. § 1983, for violations of her constitutionally protected rights under the First and Fourteenth Amendments. *See id.* ¶¶ 37-60. She also asserts a defamation claim against Defendants in

connection with the alleged publication of false statements in the Exclusion Letter. *See id.* ¶¶ 61-66. Ms. Maiden seeks actual, compensatory, and exemplary damages, as well as declaratory relief, prejudgment and post-judgment interest, attorney's fees, and costs. *See id.* (Prayer for Relief).

On July 31, 2026, Defendant IDEA moved to dismiss all claims pursuant to Rule 12(b)(6). In support, IDEA contends that Ms. Maiden "has failed to plead sufficient facts to show that IDEA is liable under the doctrine of successor liability" or under the "doctrine of joint employer liability." Def.'s Mot. 7, 10 (Doc. 32). The Motion has been fully briefed and is ripe for disposition.

## II. Rule 12(b)(6) Legal Standard

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at

678 (citation omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Id.* at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a

complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way:

> A motion to dismiss for failure to state a claim concerns the formal sufficiency of the statement of the claim for relief, not a lawsuit's merits. So when reviewing such a motion, we assume that the facts the complaint alleges are true and view those facts in the light most favorable to the plaintiff. The complaint survives if it contains sufficient factual matter . . . to state a claim to relief that is plausible on its face.

*Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 582 (5th Cir. 2020) (citations and quotation marks omitted). Accordingly, the denial of a 12(b)(6) motion has no bearing as to whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge.

## III. Analysis

Pursuant to Federal Rule of Civil Procedure 12(b)(6), IDEA moves to dismiss "all of Plaintiff's claims against [it] for failure to state a [claim]." Def.'s Mot. 11. IDEA maintains that Plaintiff's Amended Complaint is deficient because it (i) does not sufficiently plead that IDEA is liable as a successor of A.W. Brown under "the doctrine of successor liability," and (ii) does not sufficiently allege that IDEA is liable as a joint employer. *Id.* at 7, 10.[2] The court addresses each argument in turn.

[2] Citations to the parties' briefs refer to the CM/ECF page numbers at the top of the page, rather than the parties' pagination at the bottom.

### A. Successor Liability

The doctrine of successor liability "derive[s] from labor law principles" and is an exception to the general rule that a successor company is not liable for the wrongs of its predecessor. *Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745, 750 (5th Cir. 1996) (citing cases). "Although developed in the context of labor relations, the doctrine of successor liability has been extended to claims asserted under Title VII and related statutes." *Id.* "The purpose of the doctrine is to ensure that an employee's statutory rights are not vitiated by the mere fact of a sudden change in the employer's business." *Id.* (cleaned up) (citation omitted). "The doctrine is generally applied in circumstances where, absent successor liability, an employer could complete a corporate sale that would extinguish its liability to the workers, and the workers would be powerless to stop it." *Valdez v. Celerity Logistics, Inc.*, 999 F. Supp. 2d 936, 940 (N.D. Tex. 2014) (Fitzwater, J.). (citation omitted).

In *Rojas*, the Fifth Circuit adopted a nine-factor test developed in other circuits for establishing successor liability in a Title VII discrimination case:

> (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether he uses the same or substantially the same work force; (6) whether he uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product.

87 F.3d at 750 (citation omitted). "Under this test, 'the first two factors are critical,' and '[t]he remaining seven simply provide a foundation for analyzing the larger question of whether there is a continuity in operations and the work force of the successor and predecessor.'" *Valdez*, 999 F. Supp. 2d at 940 (quoting *Rojas*, 87 F.3d at 750).

Applying these elements to the Amended Complaint, the court now considers IDEA's contention that Plaintiff has failed to allege sufficient facts to state a plausible claim that IDEA is liable as a successor to A.W. Brown. In support of its Motion, IDEA challenges the sufficiency of the Amended Complaint on three grounds: first, that "Plaintiff does not allege that IDEA had notice of the charge or pending lawsuit prior to acquiring the assets of A.W. Brown" (Def.'s Mot. 8); second, that she "fails to allege that A.W. Brown cannot provide relief" (*id.* at 9); and third, that she "fails to plead a continuity in operations and the workforce of the successor and predecessor." *Id.* at 10.

***1. Notice***

IDEA argues that Plaintiff has not adequately alleged that it had notice with respect to her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") or her discrimination claims. *See id.* at 8. As previously explained, *Rojas* describes "whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor" as a "critical" factor in the successor liability test. 87 F.3d at 750.

With respect to notice, Plaintiff alleges that "IDEA had actual notice of [her] claims prior to and during its acquisition." Am. Compl. ¶ 10. She enforces the contention that IDEA had knowledge of her EEOC Charge or claims during the relevant time period with allegations that she:

> timely filed a Charge of Discrimination with the EEOC within 300 days of the discriminatory acts complained of herein, asserting claims of age discrimination in violation of the ADEA and retaliation in violation of Title VII arising from her September 29, 2022 termination and the March 15, 2023 retaliatory banning letter.

*Id.* Although the alleged facts do not detail the exact timing of the Purchase Agreement and subsequent operational transfer relative to the EEOC Charge, the court is able to draw the plausible inference based on the allegations in the Amended Complaint that the EEOC Charge was filed on

or before July 25, 2023 (within 300 days after Plaintiff's September 29, 2022 termination), approximately eight months *before* IDEA signed the March 27, 2024 Purchase Agreement.

While these facts are bare, when considered in the context of the other allegations in the Amended Complaint—including that the "Exclusion Letter was issued during the period in which IDEA [ ] was actively negotiating and implementing its assumption of A.W. Brown's campus operations" (Am. Compl. ¶ 26)—the court concludes these allegations are sufficient to plausibly allege that IDEA had notice of the EEOC Charge or Plaintiff's claims under the pleading standard required by Rule 8 and *Iqbal*, 556 U.S. at 678. *See, e.g.*, *Luxton v. J Bar Enters., LLC*, 2025 WL 4771064, at *3 (W.D. Tex. Nov. 7, 2025) (Ezra, J.) (in employment discrimination action asserting successor liability, holding that terminated employee's allegations that he already filed his Charge of Discrimination with the EEOC and the EEOC had begun its investigation *prior to* successor company's acquisition of predecessor company were sufficient to plausibly allege that successor company had notice of plaintiff's charge at the time of the asset purchase and to withstand Rule 12(b)(6) motion to dismiss successor liability claim).

Although the alleged facts do not detail the exact timing of the asset purchase and operational transfer relative to the EEOC charge, as in *Luxton*, the court determines that the allegations meet the plausible pleading standard required at this stage where Plaintiff has not yet had the benefit of discovery. "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations'" of the type called for by IDEA. *See Iqbal*, 556 U.S. at 678. "If the pleading standard were that demanding, few—if any—Plaintiffs bringing [employment discrimination] claims under a successor liability theory could meet it without the benefit of discovery." *Washington v. Patterson-UTI Energy, Inc.*, 2016 WL 3081060, at * 6 (W.D. Tex. May 31, 2016) (citation omitted).

### *2. Predecessor's Ability to Provide Relief*

IDEA next contends that Plaintiff "makes no allegation that she cannot obtain relief from A.W. Brown." Def.'s Mot. 9. The court disagrees.

First, as Plaintiff notes in her response brief, *see* Pl.'s Resp. 13-14 (Doc. 33), the Amended Complaint "addresses this factor directly" when it alleges that "[a] judgment against A.W. Brown alone would be uncollectable given its dissolution, and the successor liability doctrine exists precisely to prevent the evasion of civil rights liability through corporate dissolution or operational transfer." Am. Compl. ¶ 42. The court determines that this allegation is sufficient at the motion-to-dismiss stage and rejects IDEA's contention that this statement is "conclusory." *See* Def.'s Reply 4 (Doc. 34).

Further, IDEA's reliance on *Rojas* is not persuasive. *See* Def.'s Mot. (Doc. 32 at 10) (citing *Rojas*, 87 F.3d at 750). *Rojas* was determined at the summary judgment stage, and, as such, required more facts related to the predecessor's ability to provide relief than is required here at the motion-to-dismiss stage. *See Rojas*, 87 F.3d at 750 (noting that the successor radio station operator submitted uncontroverted evidence on summary judgment that, although its predecessor had sold off some assets, it still operated several other radio stations).

Accepting the pleaded facts as true, the court concludes that Ms. Maiden has alleged facts sufficient to state a plausible claim that IDEA's predecessor has an inability to provide relief.

### *3. Substantial Continuity*

IDEA argues that Plaintiff has failed to sufficiently allege continuity between A.W. Brown and IDEA. The substantial continuity element of the successor liability test adopted by *Rojas* requires consideration of "whether there is a continuity in operations and the work force of the successor and predecessor employers." *Id.* In *Rojas*, the Fifth Circuit listed seven factors that "provide a foundation for analyzing" the question of whether substantial continuity exists between a predecessor and successor company. *Id.* The seven factors include whether:

> there has been substantial continuity of business operations[;] the new employer uses the same plant[;] he uses the same or substantially the same work force[;] he uses the same or substantially the same supervisory personnel[;] the same jobs exist under substantially the same working conditions[;] he uses the same machinery, equipment, and methods of production[;] and . . . he produces the same product.

*Id.*

In the Amended Complaint, Plaintiff alleges that on March 27, 2024, A.W. Brown and IDEA entered into the Transfer Agreement, pursuant to which IDEA:

> (a) acquired A.W. Brown's real property located at 5701 Red Bird Center Drive, Dallas, Texas 75237; (b) assumed full operational control of the campus; (c) agreed to maintain and continue the student enrollment and educational programs serving the same Dallas community population; (d) retained teachers, administrators, and staff members previously employed at the A.W. Brown campus; and (e) operates the campus under the name "IDEA A.W. Brown Academy," expressly continuing the use of the A.W. Brown name, identity, and legacy.

Am. Compl. ¶¶ 29-30. She further alleges that "[t]he Transfer Agreement and IDEA's subsequent operations confirm extensive operational, physical, personnel, reputational, and mission-based continuity between A.W. Brown and IDEA's operation of the same campus." *Id.* ¶ 31.

These allegations cover many of the seven factors as listed in *Rojas*. Viewing the allegations as true, the court concludes these pleadings are sufficient to state a plausible claim that there was substantial continuity between A.W. Brown and IDEA.

For these reasons, the court **denies** IDEA's Motion with respect to Plaintiff's claim that it is liable under the doctrine of successor liability.[3]

**B. Joint Employer Liability**

IDEA argues that "Plaintiff has failed to plead sufficient facts to show that [it] is liable under the doctrine of joint employer liability." Def.'s Mot. 10. According to IDEA, "Plaintiff makes absolutely no factual allegations regarding IDEA's control over her employment." *Id.*

The Fifth Circuit liberally construes the term employer in addressing claims of employment discrimination and retaliation. *See Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983) (citations omitted). Under that liberal construction, more than one entity may be found to be an individual's employer. *See id.* at 403-05. Plaintiff alleges that IDEA was a joint employer with A.W. Brown. *See* Am. Compl. ¶¶ 33-34.

"Joint employers" are "employers that are unrelated or that are not sufficiently related to qualify as an integrated enterprise, but that each exercise sufficient control of an individual to qualify as [her] employer." *Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 928 (5th Cir. 2021) (court's alteration) (citation omitted). To determine whether an entity exercises enough control over the individual to qualify as her employer, the court analyzes the economic realities of the individual's employment and the entity's control over the employee. *Id.* at 928-29 (quoting *Deal v. State Farm Cnty. Mut. Ins. Co. of Tex.*, 5 F.3d 117, 118-19 (5th Cir. 1993)). In analyzing the economic realities, the court considers who pays the employee's salary, withholds taxes, provides benefits, and sets the terms and conditions of employment. *Id.* at 929. In analyzing the

[3] In their legal briefing, the parties appear to assume that the doctrine of successor liability applies to all of Plaintiff's asserted claims, notwithstanding that in *Rojas*, the Fifth Circuit only extended the doctrine to Title VII and noted that the doctrine had been extended by other courts to "Title VII and related statutes." *Rojas*, 87 F.3d at 750. As IDEA does not raise this issue in its Motion, however, the court will address this matter at a later point in the proceedings, as necessary.

right to control, the court considers whether the entity had the right to hire and fire, the right to supervise, and the right to set the employee's work schedule. *Id.* "The right to control the employee's conduct is the most important component of determining a joint employer." *Id.*

The Amended Complaint alleges that "IDEA may be held liable as a joint employer of Plaintiff if discovery establishes that IDEA exercised or shared sufficient control over the working conditions, personnel decisions, or operational policies relevant to Plaintiff's claims." Am. Comp. ¶ 33. The Amended Complaint also alleges that, "on information and belief, the challenged decisions were made by persons acting for A.W. Brown and/or decision-makers whose responsibilities and authority later became part of IDEA's operation of the same campus and school community." *Id.* ¶ 34.

Plaintiff's sparse and conclusory allegations are insufficient to state a plausible claim that IDEA was a joint employer with A.W. Brown. According to the Amended Complaint, A.W. Brown terminated Plaintiff over a year before IDEA and A.W. Brown entered into the Transfer Agreement. *See id.* ¶¶ 15, 29-30. Even viewing all allegations as true and drawing all reasonable inferences in favor of Plaintiff, the Amended Complaint lacks any allegations pertaining to IDEA's control over her employment as required to state a claim under the doctrine of joint employment. *See Perry*, 990 F.3d at 928-29.

For these reasons, the court concludes that Plaintiff has failed to allege sufficient facts to state a plausible claim that IDEA is liable as a joint employer and, therefore, **grants** IDEA's Motion with respect to this claim.[4]

---

[4] In her response, Plaintiff requests leave to amend with respect to her successor liability claim only. *See* Pl.'s Resp. 18 ("Should the Court determine that any aspect of the First Amended Complaint requires additional factual specificity to satisfy the *Rojas* framework, Plaintiff respectfully requests leave to file a Second Amended Complaint under Federal Rule of Civil Procedure 15(a)(2)). As such, the court need not address whether to allow leave to amend with respect to Plaintiff's claim against IDEA based on the doctrine of joint employer liability. In any event, pursuant to the court's Scheduling Order (Doc. 29), the

## IV. Conclusion

For the reasons explained above, the court determines that Plaintiff's First Amended Complaint states a plausible claim against IDEA under the doctrine of successor liability but not under the doctrine of joint employer liability. Accordingly, the court **grants in part** and **denies in part** Defendant IDEA Public Schools' Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(6) (Doc. 32). Specifically, the court **grants** the Motion with respect to Plaintiff's claim that IDEA is liable under the doctrine of joint employer liability and **dismisses with prejudice** this claim. The court **denies** the Motion with respect to Plaintiff's claim that IDEA is liable under the doctrine of successor liability.

**It is so ordered** this 4th day of November, 2026.

Sam A. Lindsay
United States District Judge

---

deadline for leave to amend the pleadings expired on September 8, 2026. Before the court can modify a scheduling order and grant leave to amend a pleading under Rule 15(a), the movant must first show "good cause" for failure to meet the scheduling order deadline under Rule 16(b). *S & W Enters., L.L.C. v. Southwest Bank of Alabama*, 315 F.3d 533, 536 (5th Cir. 2003) ("Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired."). No analysis or discussion of the required factors under rule 16 has been presented by Plaintiff.